LEWIS DEUEL, DORMAN CURTIS, AND WILBER J. WILSON. COMPRISING THE SOLDIERS' RELIEF COMMISSION OF KALKASKA COUNTY, v. THE BOARD OF SUPERVISORS OF KALKASKA COUNTY.

INDIGENT UNION SOLDIERS—LEVY BY BOARD OF SUPERVISORS OF TAX TO CREATE A RELIEF FUND.

Relators applied for *mandamus* to compel the respondents to forthwith meet and levy a tax of one-tenth of one mill on a dollar upon the taxable property of Kalkaska county for the purpose of creating a fund for the relief of honorably discharged indigent ex-union soldiers. An order to show cause was granted, a hearing had on petition and answer, and on November 18, 1896, the application was granted.

*Totten & Phelps*, for relators, contended:

1. That under Act No. 253, Laws of 1895, it was the duty of the respondents to levy some part of one-tenth of one mill on each dollar of the taxable property of the several townships in their county for the purpose of creating a soldiers relief fund; that they could not exceed that amount, but must levy some portion thereof; that it is no defense to say that one dollar was ordered to be spread in each township, that not being in any sense a tax levy; that it was an unequal demand on the tax payers, which they could lawfully resist.

2. That the discretion of the respondents could not control entirely in the levying of the tax; that if any amount was to be levied, it must be a reasonable amount and sufficient to aid those entitled to aid under said act; that respondents' discretion could not prevail to the extent that they could decide how much tax must be levied to aid the beneficiaries; that the soldiers relief commission estimates the amount necessary, and their estimate should control, except in cases where it is fraudulent, which is not claimed in this case; that the words "not exceeding" used in section one are words of limitation only; that the duty to raise the tax to the limit is plainly pointed out; that no implied power is granted the board to estimate the amount needed, that duty being left for the commission under section five of the act; that the power to estimate includes the power to consider and determine how

much will be needed for the support of persons entitled to relief; that the commissioners alone can best determine what amount is reasonable; that the Legislature took notice that there was in all of the counties of Michigan a number of honorably discharged ex-union soldiers, sailors, and marines, and those dependent on them for support; that they anticipated not only the present but the future possibility of some of these persons being or becoming indigent; that the levying of this tax is a statutory duty.

3. That neither expressly nor by implication has the board of supervisors any power to determine the amount of relief probably needed; that the commission has an independent and separate line of conduct to pursue; that they take into account their past expense and the amount of the fund on hand, if any, and determine the probable amount needed; that within their sphere of action their inquiry, knowledge, and determination are brought into use, in other words their decision is *quasi* judicial; that the sphere of action on the part of the board of supervisors · is separate and independent also; that their movement should be influenced by the estimate of the commission; that this line of movement is clearly contemplated in the statute; that the provision for this estimate first appeared in the statute of 1895; that prior thereto no assessment could have been for less than one-tenth of one mill; that had the Legislature intended that the supervisors should be the estimators of the amount needed, such intention would have been made manifest in the act; that even if under the act of 1889 (Act No. 193) the supervisors were permitted to estimate and determine the amount needed, the act of 1895 does not give them such exclusive power.

4. That respondents cannot consistently urge that only those listed by the supervisors in May, 1896, and returned on lists to the commission, can be aided under the act; that if that contention is to prevail, the object of the act may be defeated by the carelessness or negligence of the supervisors; that it appears by the affidavit of the supervisor of the township of Kalkaska that he must have failed to make proper lists in May, 1896, and that in his township there were indigent persons entitled to relief under the act.

5. That the act does not expressly include cases of sickness, accident, and death,—evidently a class of cases outside of those known as ordinary indigent cases; that the act does not deprive the commission of the right to hear emergency petitions, but leaves these cases primarily under the control of the commission; that supervisors cannot draw orders in such cases except when it is inconvenient to consult the commission; that they are limited in drawing orders to ten dollars, and in such cases full report must be made to the commission, after which the commission has charge of the cases, and its action in granting relief is final; that the law contemplates that the ensuing year's expenses, October 1896 to 1897, shall be estimatedbythecommission; that if the tax of 1896 is received for such purpose in March, 1897, it will be used in aiding indigent persons who are entitled to and may be listed in May, 1897, and reported to the commission by the several supervisors; that presumably such list will be made and proper action taken by the commission in May, 1897.

6. That it cannot be urged that there is a fund on hand sufficient to meet all expenses; that the unexpended fund on hand April 1, 1896, is no longer under the absolute control of the commission, and subject to its orders, for the reasons:

a--That the power of the commission to draw orders on the township clerk, and his power to draw orders on the township treasurer, under section 4 of Act No. 193, Laws of 1889, was abrogated by the implied repeal of that section by the act of 1895.

b--That by section 6 of Act No. 253, Laws of 1895, said unexpended fund is under the control of the township board, and at any instant may become a part of the general fund of the township; that relators have been informed that such fund has been in great part transferred; that there is no certainty that it will remain intact for the payment of any relief, even if power was in the commission to indirectly cause it to be paid out.

c--That by section 1 of the act of 1895 the funds raised in 1895 and 1896 were payable to the county treasurer of Kalkaska county; that no such fund is in his hands; that such funds are payable only on the order of the commission under the act of 1895; that it is evident that the only fund on which the commission can draw orders is that in the hands of the county treasurer; that until such fund is provided, the law is ineffectual, and the beneficiaries under the act cannot be relieved.

7. That the following authorities bear upon the questions involved in this application: *Wilkinson v. Cheatham* 43 Ga. 258; *State v. Smith*, 11 Wis. 65; *State v. Harris*, 17 Ohio St. 615; *People v. Supervisors*, 8 N. Y. 317.

*J. L. Boyd*, Prosecuting Attorney, for respondents.

The facts as established by the petition and answer were:

*a*—That relators comprise the Soldiers Relief Commission of the county of Kalkaska.

*b*—That there are about one hundred ex-union soldiers residing in said county, many of whom are in indigent circumstances.

*c*—That the money to arise from the tax levy asked for by relators will not be paid into the hands of the treasurer of Kalkaska county before March 1, 1897.

[The petition charged that there were unpaid bills then outstanding which had been in good faith incurred by the commission for the relief of said soldiers, which could not be paid until said fund was raised. The respondents in their answer averred a want of knowledge on this subject. EDITOR.]

*d*—That at the October, 1896, session of the board of supervisors of Kalkaska county relators made a full report to said board of their doings, specifying the amount of relief fund on hand, and requested that one-tenth of one mill be levied and collected as provided by law on the taxable property of each township in the county of Kalkaska.

[It was charged in the petition that since the making of said report the relators had been informed that a portion of the moneys raised under the acts amended by the act of 1895 had been transferred by the township boards of the townships to and made a part of the general funds of said townships; that when the report was made there was not and was not at date of the petition any money or fund on hand to defray the expense of maintaining or aiding the persons referred to in the petition. No answer was made to this charge. EDITOR.]

*e*—That the assessed valuation for 1896 of the several townships in Kalkaska county aggregated $2,341,193; that about $234.11 would be raised by taxation in said county if the respondents should comply with relators' request as to said tax levy; that this would give to each of the twelve townships a little less than twenty dollars to be used in such townships by relators in the car of poor and indigent soldiers, their widows and children.

*f*—That respondents had refused to order said tax spread as requested by relators, but had ordered spread, in the several townships, twelve dollars, or one dollar in each township; that said sum would be insufficient to aid said commission in the care of said poor and indigent soldiers.

[The answer denied that any of said poor and indigent persons were in danger of neglect or want of care on account of the action of the respondents, and charged that respondents had performed their duty in relation to the soldiers' relief commission for the best interests of the tax-payers of Kalkaska county; that they believed that the poor and indigent soldiers, their widows and children, in the several townships of the county could best be looked after and cared for in case of need by the township officers whose duty it was to care for such cases, the distinction between township and county poor existing in said county; that they could be so cared for at much less expense than by relators; that it was the judgment of respondents that they, as a board, might order spread upon the rolls of the several townships any sum not to exceed one-tenth of one mill on a dollar's valuation for said relief fund. EDITOR.]